In re VIRGINIA BLOCK COMPANY, Debtor.

VIRGINIA BLOCK COMPANY, Plaintiff,

v.

VIRGINIA MUTUAL INSURANCE AGENCY, INCORPORATED, Defendant.

Bankruptcy No. 7–80–00688.
Adv. No. 7–81–0289.

United States Bankruptcy Court, W. D. Virginia, Roanoke Division.

Jan. 22, 1982.

Stephen M. Piper, Roanoke, Va., for plaintiff.

Byron R. Shankman, Pulaski, Va., for defendant.

Joseph P. Bounds, Roanoke, Va., for creditors' committee.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue in this proceeding is whether the defendant Virginia Mutual Insurance Agency (Virginia Mutual) properly set off refunds of insurance premiums and policy dividends against a claim against the insured debtor, Virginia Block Company (Virginia Block).

Virginia Mutual is an insurance agency doing business with several insurers. For approximately 30 years Virginia Mutual acted as agent for the debtor, Virginia Block. In recent years, Virginia Block had been insured, through Virginia Mutual, by one or more of the mutual subsidiary companies of the Utica National Insurance Group (Utica). From the outset, Virginia Mutual handled the Virginia Block account as an open account. Typically, Virginia Mutual would pay the premiums due on the Virginia Block policies, showing the payment as a debit on the Virginia Block ledger. Under the conditions of the insurance contract, after the end of each policy year, Utica would audit each policy and credit Virginia Block with premium refunds or policy dividends as appropriate. Virginia Mutual applied the refunds to the Virginia Block open account. On the Virginia Mutual ledger, Virginia Block's account was credited either by direct payment or by application of the credit from Utica. The two companies party to this proceeding continued dealing on this basis for a number of years. At no time did they reduce this working relationship to writing, or make any oral contract to conduct business in this way.

The funds in question in this proceeding include unused premium refunds on the workers' compensation, automobile fleet, and general liability policies for the year 1980; policy dividends for the workers' compensation and automobile fleet policies for the year 1980; and unused premium refunds on the 1979 workers' compensation and automobile fleet policies which had been reaudited. All of these funds were remitted by Utica to Virginia Mutual in the spring of 1981. Virginia Block filed its petition for relief in this Court in June, 1980.

According to the terms and conditions of the policies issued by Utica, the refunds were to be made to the "named insured." Counsel for Virginia Mutual contends that the course of dealing between Virginia Block and Virginia Mutual manifests a contract between those parties. Virginia Mutual's position is that this "contract" estab-

lished the insurance premium account and created the relationship of debtor and creditor between the parties. Consequently, Virginia Mutual claims, under § 553(a) of the Code, a right of setoff of the funds remitted by Utica in April, 1981, against the pre-petition balance due Virginia Mutual for advancing premium payments to Utica. Virginia Block counters by denying any contract that might establish a debtor-creditor relationship between the parties, and further contends that Virginia Block's filing of a petition in this Court severs the pre-bankruptcy relationship of the parties and establishes the debtor in possession as a separate entity.

At the time of filing of a petition for relief in this Court, the trustee or debtor in possession acquires the rights and powers of a hypothetical lien creditor. See 11 U.S.C. §§ 544(a), 1107(a). The date of filing is the date of cleavage for all affairs of the debtor. Pre-petition matters are separate and distinct from any further business that is conducted by the debtor in possession. There is no question that the funds here disputed came into the possession of Virginia Mutual after the date of filing. In order for Virginia Mutual to establish a right to the funds, therefore, it must show a pre-existing right to those funds that is superior to the debtor's post-petition right to claim the funds for the estate.

From the evidence before the Court, it is clear that there was no express contract between the parties. Virginia Mutual, it seems, would have the Court find a contract implied in fact. Virginia Mutual contends that the course of dealing of the parties establishes a contract between them. The "contract", according to Virginia Mutual establishes a debtor-creditor relation between the parties and gives Virginia Mutual a superior claim to the funds received after the filing of the petition.

A contract implied in fact presupposes mutual agreement and intent to promise, which agreement and promise have simply not been expressed in words. 4B Michie's Jur. Contracts § 99 (1974 Repl. Vol.) [hereinafter cited as Michie's]. A contract implied in fact is a true contract, differing from an express contract only in the lack of express terms and conditions. Id. Without the intent to contract, a court cannot find a contract implied in fact. A course of dealing, while it may be used to interpret an ambiguous contract, does not establish the existence of a contract where one does not otherwise exist. See 17 Am. Jur. Contracts § 272 (1964).

In some cases, when the equities of the situation so dictate, a court may impose a contract implied in law, or quasi-contract, on the parties, regardless of their intent. Michie's, supra. A quasi-contract is not a contract at all, but a remedy imposed by the court. Id. Where an express contract is not made, but might have been, or in "equity and good conscience" should have been made, the law will impose the duty and infer the necessary promises to affect a contractual relation between the parties. Grice v. Todd, 120 Va. 481, 91 S.E. 609, 611 (1917).

In no event, however, will a court impose an implied contractual relation on parties in contravention of an express contract. Michie's, supra. The funds here in question are the subject of an express contract between Virginia Block and Utica. The contract provides that any premium refunds or policy dividends shall be paid to the "named insured", Virginia Block. There is no ambiguity in that contract, and this Court will not infer or otherwise impose a contract between Virginia Mutual and Virginia Block concerning treatment of those funds. They are the property of Virginia Block as of the date Utica remitted them to Virginia Mutual.

The critical determination in a question of setoff of a debt of the debtor against a claim of a creditor is whether the debt is mutual. See 11 U.S.C. § 553(a). As a general rule, for mutuality to exist, each party must own his claim in his own right severally, with the right to collect it in his own name against the debtor in his own right and severally. 4 Collier on Bankruptcy ¶ 553.04[4] at 553–30 (15th ed. 1980)

[hereinafter cited as Collier]. The established formula for finding mutuality under previous bankruptcy law applies equally under the Code. To allow a setoff, the court must find that the claims of the parties are owing to and due in the same rights and capacities. *See Nairn v. J.A. Acosta & Co. (In re Rosenbaum Grain Corp.)*, 103 F.2d 656, 659 (7th Cir. 1939). Both the debt owing by the creditor and the claim against the debtor must have arisen before the commencement of the case. 11 U.S.C. § 553(a). Because Virginia Block's debt to Virginia Mutual is one that arose prior to its bankruptcy petition, and the insurance funds in question here were remitted to the debtor in possession, this claim and debt lack the requisite mutuality. A post-petition debt cannot be set off against a pre-petition claim.

For the reasons stated herein, it is, therefore,

### ORDERED

that the funds remitted to Virginia Block by Utica after the date of Virginia Block's petition for relief in this Court are property of the debtor's estate and are to be forwarded to the debtor. The defendant, Virginia Mutual, is given leave to amend its claim against the debtor as appropriate, within ten days from the date of entry of this Order.

Service of a copy of this Memorandum Opinion and Order is being made by mail to the Debtor; Stephen M. Piper, Esq., Counsel for Plaintiff; Byron R. Shankman, Esq., Counsel for Defendant; and Joseph P. Bounds, Esq., Counsel for Creditors' Committee.